Yes, Michael Satris, again, on behalf of Mr. Hayward, and I will try to reserve a minute before rebuttal. Mr. Hayward's case brings us from the yin of the beginning of the parole consideration process, and we see how that's worked so far, to the yang of the end of the parole process, because Mr. Hayward has now been incarcerated almost 30 years on his second degree murder conviction for a crime that was committed in 1979. He's been free of all awakening in 1991, more than 15 years ago, and since then has been living a life of principled moral existence without any problem. This is the guy that went and found the guy who had had some sort of altercation with his girlfriend or his wife, his girlfriend later becoming his wife, and he winds up killing the guy, right? Yes, Your Honor. In plunging the knife to the head. Yes. You raise a dispute, sort of, about the provocation aspect of why he did this. The state says that the victim had slapped the girlfriend, whereas in your brief, when the brief filed for Mr. Hayward, there's this other story told that it actually involved an attempted rape and that she was beaten, severely injured, she was dragged by the hair from a car at speeds, I guess, up to 20 miles an hour, and that she was, this was sort of a serious assault on her. Right. I'm sort of wondering, since provocation seems to be one of the issues that the parole board takes into account in deciding whether or not a crime is sufficiently aggravated, how do we, who determines these facts and how as to whether the provocation was serious or the provocation was low? Well, initially, that is determined by the parole board because they're the ones who are conducting the fact-finding hearing, and they seek to tell me about that. How does that happen? Well, you have your parole consideration hearings, and then you are entitled to present evidence that's relevant to the parole determination. And the board fills in facts that may go beyond the facts of the trial court record. When you say you're entitled to present evidence, does it mean you bring in witnesses or you bring in, I mean, the guys in prison, this thing would have happened years earlier. That's the problem. You present documents and your own testimony that you can't bring in witnesses. I see. So he testifies, did he testify at the parole board hearing that this was a provocation? Yes, Your Honor. And did the board make findings on this? Yes, they believed it. They found that, in fact, the crime was a product of significant stress, because not only was it just what had happened that six months earlier, but there was all of the dealing every day. He was dealing with the effects on his girlfriend who became his wife by that time, the six months later. And so there had been an accumulation of stress. And, of course, what happens then is he admittedly goes to the bar to seek this guy out, to beat him up because of this. Well, before you get away from that, so for purposes of deciding whether there is some evidence here or doing our review, which factual scenario do we accept as far as the provocation is concerned? The State assists, and it's brave that still we're not going to slap here. What is the factual predicament there? What do we assume happened? I think the question is whether or not we have is the parole board finding facts. But then we have the ---- Finding what? Finding that, you know, accepting the defendant's factual evidence of the provocation that was involved or the stress that he was under. It's a little bit different. Well, did the board find, either explicitly or implicitly, that his statement as to the provocation was not convincing, that he was not telling the truth? Did the board find that? The board found just the opposite, explicitly, that he was. But the governor reviewed the board's determination and made the conclusion, I'm not going to believe any of this stuff. I don't understand. What is the basis for the State's claim that the only provocation was that he slapped this girl? What is that based on? That's based on the trial court record because it never became an issue of provocation because the defense at that point was I wasn't the guy who did the crime. So provocation was irrelevant, apparently, from the defense attorney's perspective, at least. So none of that evidence came out of trial. But it did come out of trial that there was substantial altercation. The evidence of a slap was based on, I think, Elko, one of the victim's friends, the guy who actually ended up chasing the defendant and the others with a knife after the, you know, in the immediate aftermath of the stabbing. Did the board actually make any explicit finding in so many words as to what the provocation was? Yes. Well, put it this way. The board found that the crime was committed as a product of substantial stress, which is one of their regulatory factors that had built up over time. Because, like I say, not only was the ---- But it sounds to me as though they didn't say whether they thought there had been an attempted rape of this girl or whether she had merely been slapped. They didn't explicitly make a finding on that issue. They didn't make an explicit finding on that issue. I think implicitly they found that she had been substantially injured and that the defendant had in that time ---- That's what you ---- I know. But the board did not ---- I just want to make sure. The board did not explicitly make a finding on that point. Right. Okay. That's all I'm asking. I think ---- I believe so. I believe so. But, you know, there ---- I don't think there's any reason to believe that Mr. Hayes or Mr. Hayward at this point, you know, is creating this elaborate set of lies to explain, oh, I'm fine, and that ---- The problem is we review for some evidence. Right. And if the decision is, well, he did this with little or no provocation, that's a fact under Dannenberg that can ---- that is some evidence to support the decision. So what provocation he had turns out to be fairly significant because if he, you know, there was a lot of provocation, it's much ---- it's, you know, if the facts that he relates are not true, that sounds a lot more, you know, plausible that he would go chase the guy six months later and get into a fight and that might result in a death than if what was involved was just a slap in the face. So I ---- just one just seems like vastly more provocation than the other. So what do we accept as a ---- I don't know. In that case, you have to accept either end of the spectrum. But any way you look at this case, there was substantial provocation because then there's the confrontation and then he's going to leave. He's departing from the scene without taking the intended action of beating up the victim. And the victim then comes out after he tries to get a weapon from the bartender, right, but can't. So he gets a full bottle of beer and throws it at them and hits the companion in the head, resulting in 65 stitches. And at that point, Mr. Hayward goes crazy and has an explosive shot of anger and attacks and beats him up and stabs him viciously to death. So that is the crime. There's however level of provocation you want to put to it. But the question before this Court, is there some evidence to show that what Mr. Hayward did in 1979 continues to this date to show that he presently presents an unreasonable risk to public safety? And for all the reasons I've indicated, whatever value the crime itself has, this has become what the courts have started to term historical relic in the case. Because it doesn't have probative value now in assessing the risk that Mr. Hayward presents now. Because so much time has gone by and there's been such a change in Mr. Hayward. And that's what Biggs and all of these courts talk about, that at some point if you're going to honor the parole system, especially one that says that most prisoners should be granted parole early in their term, and then you have a system as we have in this case where the parole board finally, many years down the line, Mr. Hayward is 63 years old now, concludes that in fact that crime, because there was stress involved and because of all the other factors about him in the case, show that he does not present an unreasonable risk, and they grant him a parole date. And then you have Governor Davis, and this was the board acting en banc. This was the majority of the board. And then you have Governor Davis going back to the crime and other historical static factors, reversing that parole grant. The board the next year gives him a date. And remember, the parole date they granted him in accord with the legislative design for uniform and proportionate terms. This is a remedial statute designed to provide for fair terms for prisoners, even life prisoners, with a date that would have given him a parole date in 1993. A hundred and sixty-five. My question I have for you is this. Do we have precedent that tells us whether the standard for reviewing the Governor's action is the same as that for reviewing the parole board, or is it different? You do not have precedent in the sense of Sass and Biggs and Irons are all cases in which the parole board had denied parole. The closest precedent you have is McQuillian, which provides that once you have a parole date, you know, that's a valuable interest. And certainly for the parole board to rescind the date, you have to have substantial cause. You have to have cause. You have to have ---- Okay. Well, once you have the parole board granting parole, and then Governor Davis executes a turn on it, if you were trying to say that Governor Davis's action offended due process, what's the best Supreme Court authority that you have that would support that? I think it still comes ---- Because we ---- it is a ---- it's an AEDPA case. Right. So, you know, maybe subject to the re-hearing, Irons still applies despite Mouslatin. But the Supreme Court takes AEDPA pretty seriously. Things have to be tied to their authority. Right. So what would be ---- if you were trying to fashion a different standard for review of a governor's action, or would yours, it's still ---- would you say it should still be the same, the some evidence standard? I think it's still Superintendent v. Hill and some evidence. I mean, that's what McQuillian used, even in the parole rescission context. But there should be some evidence ---- State law says that the governor applies the same standard as the parole board, right? Right. And does a de novo review. Right, but there's no different standard. It's ---- he's supposed to apply the same standard. Correct. Same ---- Insofar as we've held that that gives a due process right vis-a-vis a decision of the parole board, the same right that applies to the governor. Yes. It's exactly the same statute that's being applied. The governor doesn't have sort of unlimited discretion. No. More discretion to apply a different statute. No. That was made very clear in the Rosencrantz case. So ---- The governor purports to apply the same standard. Right. He's subject to all the same due process constraints that ---- So once again, the standard is the same as if it were ---- as if we were reviewing the parole board decision, was there some evidence to support the governor's denial of parole? That's the standard, isn't it? Yes. But I ---- again, the Hill standard is, is it ---- is there some evidence or is it otherwise arbitrary? And we have arbitrariness in the governor's action because he was ---- again, these statistics are in the record. He was reversing virtually every parole grant that was made, all but six in the record here of all the 500 dates that were granted. So you see how the process has become a total farce and sham. Nobody's getting a parole date when they're supposed to. By the time the few people do, and Mr. Hayward is in the lead here. He's one of only a few hundred out of thousands that have gotten a parole date. He's getting his way, way beyond the terms that should be set for him to provide uniform and proportionate punishment under what the legislative envisioned. And then that's being taken away from him at the end of the process by the governor. So you have a complete fantasy or pro forma parole system going on here where virtually nobody is getting out unless maybe they are the prisoner that has everything surrounding the commitment offense being mitigating. They killed their wife in a fit without any prior violence, and they've been disciplinary free for 30 years or whatever, and now they're 65 years old. So the parole board gives them a date finally, and then the governor, you know, in some unpredictable way, allows that date to proceed. And so that lucky fellow gets out 15 or 20 years after the date that the parole board set for him. And it's important, I think, for the Federal courts to step in and do something about that. And in Mr. Hayward's case, the relief is very clear because he's twice been granted a date by the parole board, and it's a date that was many, many years in the past, 1993. He's entitled to a habeas relief that grants him release from prison. Thank you very much. Good morning again. Julie Garland on behalf of Respondent Appellee. The state court issued a reasoned decision and very thoroughly reviewed the governor's decision in this case and found sufficient evidence to support it under the sum evidence standard. Because of that, this court reviews that to determine if that's contrary to... What was the sum evidence here? The sum evidence, there were several factors that the state court found supported by the record. They found that this, again, was a senseless crime. It was a revenge murder that was premeditated for several months. It was a vulnerable victim who was outnumbered, who, according to the record, was inebriated and unarmed. It was an extremely vicious attack on the victim, stabbed multiple times in the end of the knife. What's the significance of that? It demonstrates the viciousness, and under California law, that is a factor supporting... If you're going to stab somebody, what are you going to do, poke the skin? I'm sorry? If you're going to stab somebody to kill them, are you going to just break the skin and pull out? I mean, you stab. It's sort of like saying, oh, the bullet went all the way through the body. Well, that's what bullets do. I don't see anything here that doesn't apply to a generic murder. The state court did, Your Honor, and under the sum evidence standard, they found that under the regulations, the governor had support in the record for most of his findings. The inmate also kind of had some changed stories throughout his parole review period. He also had a significant substance abuse history and did not, in the governor's opinion, did not come to terms with that or had not come to terms with that at the time of his hearing. You know, the thing that troubles me a little about this is it seems to me that in every murder case, you can make the same argument. I mean, nobody's going to be convicted of murder unless they committed some pretty bad things. And you can always say, well, this was a very serious crime and therefore he shouldn't be turned loose. And you're also going to find that most of the people who commit these murders have a bad childhood history. So you say, well, he's not a very reliable character and so on. Or a good childhood history. And they say, well, he's an ungrateful child. Exactly, Your Honor. And that's why in the Federal habeas review context, these types of facts are not appropriately considered by the Court. That's a State issue about when to review. Well, we have to give, you know, extreme deference to a State parole board and the governor. I'm pretty certain of that. But still, I don't think you can go so far as to say that the Federal court should consider these factors because if there's a sum evidence test, that's what we have to consider. I understand, Your Honor. But under Greenholtz, the Court specifically says there are no set of facts that would prove an inmate is entitled to release. And that's why the sum evidence standard. It sounds like Greenholtz, this is before your time, possibly. But, you know, there was a song by the Eagles about Hotel California. You can check in, but you can never leave. So are you saying that the California precedent, you do a murder, you check in, but no matter what you do in prison, no matter if it's 40 years later, you can never be paroled? No, that's not what we're saying. But I would say that that's a State court decision, not a Federal court decision. Whether California wants to have a Hotel California, that is the California's prerogative. They don't have that. There obviously are inmates who have been convicted of life crimes who are released. But that's not a Federal question. And to review the facts of these crimes in depth is, it goes beyond what Greenholtz says and it even goes beyond what Superintendent B. Hill says in assuming that that is the standard. And I mention it in the previous argument the Court asked, why do I care? Why do I want to show why this is not the standard? The reason is — I don't think anybody asked you that question. Well, it was why I didn't want — I don't really care why you care. Okay. I prefer not to know. Well, the reason I was — We're here to make legal arguments. It's not about feelings and personal views or anything. It's not about personal feelings. I'm talking about why I wasn't addressing — why we're not addressing the state — the some-evidence standard head-on as much. If you don't want to address it, it's fine. Just — Why don't you save us the time and sit down? And if you want to take the time to talk about it, that's fine. It's your choice. We have our law to apply. If you don't want to speak to certain issues, you've got a client to serve, and that's perfectly fine. And I am addressing the some-evidence standard as established by Hill and the Court in Sass and even in Irons. I have addressed that, and I think that — and I've addressed the issues that support that. I do want to say, though, that the Federal — I don't really think you have, but — The Federal courts — the lower courts are very confused. We're seeing — we're seeing orders issued weekly where the courts don't know what to do and how to address that some-evidence standard now, following Sass, which was very deferential, then Irons, which kind of came back and seemed to be a little bit more addressing of specific facts of the crime. The Federal — the lower courts are not consistently applying this standard, and so it's hard even for us to address, Mr. Stafferson or myself, to address what really matters under the standard in this Court. And there are thousands of hearings every year by the Court. Why are you telling us all this? What does that have to do with this case? It has to do with any case before the Court, because it matters whether the Federal courts are reviewing the sufficiency of the evidence. I know. You're back to arguing that we ought to deem Sass to be wrong and that Irons was wrong. And, you know, these are questions you can address in the petition for a hearing in Irons, and we will look at them, and that's perfectly fine. But why are you spending the time here reiterating that when we've been told to us very clearly there's nothing we can do about it? You can file a petition for a hearing in this case if it comes out wrong. You can pursue it in Irons. But, you know, if you don't have anything to say about this case, then maybe you need to sit down and get on. I'm trying to argue the standard, which is that Federal habeas relief is not available unless the State has done something contrary to what the Supreme Court has said. It isn't the real question in this case whether in light of the two decisions of the parole board saying this person was entitled to parole, whether in that circumstance the Governor's overruling decision has some evidentiary support. Isn't that the issue that we have to decide in the habeas case? Yes, and that issue was decided by the State courts, that there was some evidence after thoroughly looking at it. The record supported the Governor's findings on most of the factors he cited. And the Supreme Court has never held that the Governor can't deny parole for the exact reasons he did, and that's why we say habeas relief is not available to Mr. Hayward just as the district court found it. The district court had said nothing. Suppose all the — what happened in this case is you had two decisions of the parole board saying he was to be admitted to parole, and then the Governor puts out a one-sentence order saying, I have concluded that he should not be admitted to parole. Could that be sustained? If the State court sustained it, yes, because the Supreme Court is — Or assume the State court sustained it, and then he comes in for Federal habeas and saying, not only isn't there some evidence to support the Governor's action, there's no evidence. And the Governor, in effect, recognized there's no evidence because he didn't even purport to explain the basis of his decision. He just arbitrarily said, I disagree. Is that — are you — it's not clear to me. It sounds almost as though you're saying that when the Governor decides to deny parole, it's no business of the Federal courts to even look at that action. As to the substance of the decision, yes. And so because the Supreme Court has not — Well, if we look at the substance of the decision, what can we look at? Whether he received the procedures established. And if it's an arbitrary decision, if the Governor had said, I don't like your — Well, what about the Supreme Court precedent that says due process requires fundamental fairness? There's a lot of that precedent around. So, I mean, couldn't we — don't we have authority if we had a case that Judge Friedman puts where the Parole Board grants parole and the Governor, without giving any reasons, reverses it twice? Wouldn't we be able to say there's a lack of fundamental fairness in the decision? Yes, Your Honor, under Greenholz, because Greenholz does require the inmate to have that written statement of the reasons he felt short. So there is Supreme Court authority establishing that. If the Governor said, I don't like you, I don't like your haircut, that would be on its face arbitrary. But that's not what Mr. Haywood is arguing. He's arguing about the sufficiency of the evidence and asking the Court to reweigh that evidence to determine if the Court essentially deems him suitable or not suitable for release. There's no Supreme Court authority that establishes that. And because of that, this Court cannot grant Federal habeas relief. This isn't an issue of an arbitrary denial. This is an issue with a disagreement with the Governor's decision. The State court reviewed it under a standard that's far greater than what the Federal courts provide and found that there was sufficient evidence that that should be the end of the story. The State courts ever or frequently overrule a Governor's decision? Yes, they do. They do? More often lately than in the past. Yes. Thank you. Thank you. To sort of elaborate on the last question, Your Honor, they are doing it more and more frequently. There's a number of cases recently in the last month or two that we could cite to the Board. But that goes to show that there's an ongoing practice of the Governor that's arbitrary and capricious. And ultimately — I don't understand why the fact that the courts are more frequently overruling the Governor, how does that show that the Governor's actions are arbitrary and capricious? It may just show that there's been a wide variety of different factual cases coming before the Court. Yes. But where a Governor acts capriciously for no good reason, for any reason or for no reason, you know, that's an extreme action. And the Governor is doing that time and time again. And that's the only way the Governor can reverse 9 out of 10 parole cases, because it's only the cream of the crop, the ones that are most deserving of parole under the State system that are even being found suitable for parole, should be a no-brainer in those cases to affirm or let stand the decision of the Parole Board. And yet the Governor is time and again denying parole. And what's fundamentally unfair about it is the fact that we have a parole system that the State has set up that envisioned that most life prisoners would be granted parole. It's a different question. How frequently does the Governor uphold the decision of the Parole Board? Well, Governor Davis, it was upheld about 1 to 2 percent of the time. Governor Schwarzenegger, right now, it's about — Now, I'm sorry. I didn't ask you how often his decision was upheld. How often does the Governor — Yes. — sustain the Parole Board? You say in only 1 or 2 percent of the cases? Yes. That's the record in this case. Governor Schwarzenegger has gotten a little bit more reasonable. He upholds about 10 percent, 10 to 15 percent. The whole system is a farce and a sham because it's not a system that's set up to say to the Parole Board or the Governor, we want you to rarely grant prisoners parole and grant them parole only in the most exceptional cases. It's a system where parole is supposed to be the rule and not the exception. And the — all I heard in terms of this case, all the evidence went back nothing since 1979, when the time was — when the crime was committed. The substance abuse history, that's a factor that favors Mr. Hayward's parole, as the cites found, because he's been in substance abuse treatment and no longer is at risk to use substances. So that this is the kind of case where you have repeated grants of parole by the board, where it has been almost 30 years, that at some point the whole idea of parole is a prisoner can change and rehabilitate himself. That needs to be recognized. And it's arbitrary and capricious for the Governor not to. Thank you. Okay.  We'll stand a minute.
judges: Friedman, Kozinski, Gould